```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:                                             :    NOT FOR PUBLICATION
                                                   :
                                                   :
       RUDOLFO & MARIA ADRIANA                     :
       LOZANO                                      :    Chapter 13
                                                   :    Case No. 08-11242 (MG)
                        Debtors.                   :
----------------------------------------------------------------x
RUDOLFO & MARIA ADRIANA LOZANO                     :
                                                   :
                                                   :
                        Plaintiffs,                :
                                                   :
                                                   :    Adv. Proc. No. 08-01388 (MG)
              - against -                          :
                                                   :
                                                   :
                                                   :    MEMORANDUM
                                                   :    DECISION & ORDER
                                                   :    GRANTING, IN PART,
FREMONT INVESTMENT & LOAN, et al.                  :    MOTIONS TO DISMISS
                                                   :
                        Defendants.                :
----------------------------------------------------------------x
```

**COUNSEL**

David J. Hoffman
29 Broadway
27th Floor
New York, NY 10006
(212) 425-0550
*Attorney for the Debtors*

Mark R. Knuckles
Knuckles & Komosinski, P.C.
220 White Plains Road
6th Floor
Tarrytown, NY 10591
(914) 220-0155
*Attorney for Fremont Investment & Loan*

Michael E. Gorelick
Alexandra E. Rigney
Abrams, Gorelick, Friedman & Jacobson, P.C.
One Battery Park Plaza
4th Floor
New York, NY 10004
(212) 422-1200
*Attorneys for Phil Napalitano*

Lisa L. Shrewsberry
Alexis J. Rogoski
Traub Eglin Lieberman Straus
7 Skyline Drive
Hawthorne, NY 10532
(914) 347-2600
*Attorneys for Nydia Padilla-Barham*

**MARTIN GLENN,**
**United States Bankruptcy Judge**

This matter is before the Court on three defendants' motions to dismiss the complaint for failure to state a claim and failure to plead fraud with particularity. For the reasons explained below, the motions are granted in part, and the Court grants leave to the Plaintiffs to amend the complaint.

## BACKGROUND

On April 8, 2008, Rudolfo and Maria Lozano (the "Lozanos," "Debtors," or "Plaintiffs") filed a Chapter 13 bankruptcy petition. On August 8, 2008, they filed an adversary complaint against Fremont Investment & Loan ("Fremont"), Patrick Bowie ("Bowie"), Rosalee Hayward ("Hayward"), Yvette Ciocci ("Ciocci"), Kateria Rivera ("Rivera"), Jose Camacho ("Camacho"), Phil Napalitano ("Napalitano"), Nydia Padilla-Barham ("Padilla-Barham"), Saxon Mortgage Services ("Saxon"), and Carrington Mortgage Services, LLC ("Carrington"), alleging that the defendants committed fraud,

2

aided and abetted fraud, and tortiously interfered with economic relations with respect to mortgages the Plaintiffs obtained against four properties they owned.[1] Adv. Pro. No. 08-01388, ECF Doc. # 1 ("Complaint"). Three of those defendants—Fremont, Napalitano, and Padilla-Barham—move to dismiss the complaint for failing to plead fraud with particularity and failing to state a claim for relief.

### FACTUAL ALLEGATIONS

This case concerns allegations of fraud orchestrated by Bowie, a now-convicted murderer, who held himself out to the Lozanos as a mortgage broker, and by his mother, Hayward.[2] As discussed in more detail below, the complaint generally alleges that Bowie and Hayward fraudulently induced the Lozanos, who speak little English, to enter into a number of sham mortgage transactions that resulted in them assigning to Hayward title on two properties they already owned and purchasing two others without actually acquiring title to the properties. The complaint also generally alleges that Bowie and Hayward were assisted by a number of individuals and a mortgage lender who either knew or should have known that the Lozanos were being misled. What follows is a more specific discussion of the allegations with respect to each property:

*17 Liberty Street, Newburgh*

In 2006, among the properties the Lozanos owned was a home at 17 Liberty Street, Newburgh, New York, against which they sought to obtain a mortgage.

---

[1] The Lozanos only assert the tortious interference claim against Hayward.

[2] Bowie is currently serving a life sentence in prison without possibility for parole after being convicted of first degree murder. Complaint ¶ 40.

3

Complaint ¶ 9. Bowie, who the Lozanos heard was a mortgage broker, offered to arrange mortgage financing for them. Complaint ¶¶ 11-12. The Lozanos agreed, and attended a closing in the Bronx that they thought was necessary for the execution of the mortgage documents. Complaint ¶ 13. In fact, the "closing documents" included a transfer of title from the Lozanos to Bowie's mother, Hayward. Complaint ¶¶ 14-15. Present at the "closing" was Bowie's attorney, Camacho, who also served as an interpreter. Complaint ¶ 15. Camacho did not reveal that the documents the Lozanos signed actually transferred title to Hayward, but rather told the Lozanos that the documents were necessary for the mortgage. Complaint ¶ 15. Napalitano was also present at the closing. He is identified as an attorney who prepared the closing documents for a transaction he knew or should have known was fraudulent. Complaint ¶ 15, 56.

At the closing, the Lozanos received $88,000, and agreed to forward mortgage payments to Hayward, even though the actual amount of the mortgage was far in excess of $88,000. Hayward and Bowie allegedly received substantial fees for the transaction. Complaint ¶¶ 17-18, 22. Defendant Fremont was the mortgage lender on the property.[3] Complaint ¶¶ 19, 21. According to the complaint, Fremont paid Bowie a fee for procuring the mortgage and Bowie worked for Fremont. Complaint ¶¶ 20, 57. The Lozanos allege that Bowie, Camacho, Napalitano, and Hayward then misappropriated the proceeds of the loan. Complaint ¶ 60. The Lozanos also allege that Fremont did not file the mortgage in good faith. Complaint ¶ 58. To this day, the Lozanos remain in control of 17 Liberty Street, renting units to tenants and performing maintenance and upkeep on the property. Complaint ¶ 23.

---

[3] Fremont would later assign the mortgage to Saxon. Complaint ¶ 59. The Debtors have a proposed settlement agreement with Saxon that provides that Saxon will pay the Debtors $12,500 in settlement of all claims against it. *See* Case No. 08-11242, ECF Doc. #79.

4

*119 Clinton Street, Kingston*

Bowie also offered to help the Lozanos obtain a mortgage on the other property they owned, 119 Clinton Street, Kingston, New York. Complaint ¶¶ 27-28. Just as with the 17 Liberty Street property, the Lozanos attended a closing that they thought was necessary for obtaining the mortgage. Complaint ¶ 29. The documents the Lozanos signed again transferred title to Hayward, and Camacho was again present at the meeting to serve as an "interpreter." Complaint ¶ 31. In this case, Padilla-Barham, an attorney, allegedly prepared the closing documents and was present at the meeting. Complaint ¶ 30. The Lozanos received $50,000 from that transaction, and began forwarding mortgage payments to Hayward at Bowie's direction. Complaint ¶¶ 32, 34. Fremont was once again the lender and Bowie was allegedly working on its behalf.[4] Complaint ¶¶ 49, 67. The Lozanos remain in control of 119 Clinton Street. Complaint ¶ 33.[5]

*15 Fisher Lane, New Hampton*

In addition to helping the Lozanos obtain the two mortgages, Bowie also tried to sell the Lozanos a home located at 15 Fisher Lane, New Hampton, New York, on behalf of its then-owner, Rivera. Complaint ¶¶ 5, 24, 72. To complete the transaction, the Lozanos paid Bowie $15,000, and agreed to assume all mortgage payments and responsibilities on the property, and have since maintained control of the property, renting it to tenants and performing upkeep on the property. Complaint ¶¶ 25-26. Fremont was again the lender on this property. Complaint ¶ 49. Unbeknownst to the

---

[4] Carrington has since succeeded to Fremont's rights to this property and is also a defendant in this action, although it did not move to dismiss.

[5] Hayward briefly asserted an ownership interest in the 17 Liberty Street and 119 Clinton Street properties, but has since disavowed any interest. Complaint ¶ 47.

5

Lozanos, Rivera would remain the record holder of title on the Fisher Lane property. Complaint ¶ 5.

*706 Third Avenue, Watervliet*

After the Fisher Lane transaction, Bowie again contacted the Lozanos and offered to sell them a property at 706 Third Avenue, Watervliet, New York. Complaint ¶ 35. The Lozanos paid Bowie $15,000, which they believed was a down payment, and continued to perform maintenance and upkeep while maintaining exclusive control over the property.[6] Complaint ¶¶ 37-38. In fact, Ciocci, the record owner of the property, never transferred title to the Lozanos.

As a result of these actions, the Lozanos brought claims for fraudulent misrepresentation and aiding and abetting fraud against all the defendants.[7] Padilla-Barham, Napalitano, and Fremont all move to dismiss the case for failure to state a claim for fraud or aiding and abetting fraud. For the reasons explained below, the motions are granted with leave to amend with respect to Padilla-Barham and Napalitano, and is granted in part and denied in part with respect to Fremont, with leave to amend.

## DISCUSSION

**A.** <u>**Standard of Review**</u>

On a motion to dismiss, the Court assumes all well-pleaded allegations to be true and construes them in the plaintiffs' favor. *Boykin v. Keycorp*, 521 F.3d 202, 204 (2d

---

[6] Countrywide Home Loans, Inc., a non-defendant in this action, services the mortgages on this property. The Lozanos have entered into a proposed settlement with Countrywide providing, among other things, that Countrywide would pay the Lozanos $7,500 in exchange for removing a mechanic's lien the Lozanos filed against the property. Case No. 08-11242, ECF Doc. #75.

[7] The Lozanos also allege a claim for tortious interference with economic relations against Hayward. Hayward has not moved to dismiss the complaint.

Cir. 2008); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). Further, consideration is limited to the factual allegations in the complaint, any documents attached as exhibits or incorporated by reference, and documents on which the plaintiff relied in bringing the suit. *In re Marketxt Holdings Corp.*, 361 B.R. 369, 384 (Bankr. S.D.N.Y. 2007). The complaint must provide plausible grounds for the allegations with enough factual support to raise a reasonable expectation that discovery will reveal evidence to support them. *Mazzaro de Abreu v. Bank of America Corp.*, 525 F. Supp. 2d 381, 386 (S.D.N.Y. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

**B.      Fraud Claims**

Under Federal Rule of Civil Procedure 9(b), when alleging fraud, "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To meet this standard, the complaint "must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *In re CTT Commcn's, Inc.*, Slip Copy, 2008 WL 2705471, at *15 (Bankr. S.D.N.Y. Jul. 2, 2008) (Bernstein, C.J.) (citing *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)). "As a rule, a pleader cannot allege fraud based upon information and belief unless the facts are 'peculiarly within the opposing party's knowledge.'" *In re Grumman Olson Indus., Inc.*, 329 B.R. 411, 429 (Bankr. S.D.N.Y. 2005).

Under New York law, to assert a claim for fraud, a plaintiff must show "(1) that [the defendant] made a misrepresentation (2) as to a material fact (3) which was false (4)

7

and known to be false by [the defendant] (5) that was made for the purpose of inducing [the plaintiff] to rely on it (6) that [the plaintiff] rightfully did so rely (7) in ignorance of its falsity (8) to his injury." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (citing *Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir. 1987)).

Furthermore, "[a] principal is liable for the fraudulent acts of his agent committed within the scope of his authority, and if the agent acted outside the scope of his authority, the principal is nevertheless liable if he later ratifies the fraudulent acts and retains the benefits derived from them." *Adler v. Helman*, 169 A.D.2d 925, 926 (3d Dep't 1991) (citing *Chase Manhattan Bank, N.A. v. Perla*, 65 A.D.2d 207, 211 (4th Dep't 1978)); *see also Dyke v. Peck*, 279 A.D.2d 841, 843 (3d Dep't 2001) (holding that real estate broker's misrepresentation could be imputed to the seller where the broker was acting within the scope of his engagement). "However, where the fraudulent conduct of an agent is such that the agent would withhold facts from the principal, his knowledge is not imputed to the principal." *Quintel v. Citibank*, 606 F. Supp. 898, 913 (S.D.N.Y. 1985); *Gen. Elec. Cap. Mortgage Servs., Inc. v. Holbrooks*, 245 A.D.2d 170 (1st Dep't 1997) (holding that mortgage broker's fraudulent actions may not be imputed to the lender if the broker had to have concealed the fraud from the lender for the fraud to succeed).

C.      **Aiding and Abetting Fraud Claims**

Under New York law, to prove a claim for aiding and abetting fraud, a plaintiff must show (1) an existing fraud, (2) knowledge of the fraud, and (3) substantial assistance to advance the fraud's commission. *McDaniel v. Bear Stearns & Co., Inc.*, 196 F. Supp. 2d 343, 352 (S.D.N.Y. 2002); *see also Croner v. Berger*, 137 F. Supp. 2d 452, 470 (S.D.N.Y. 2001). To show substantial assistance, the plaintiff must demonstrate

8

that (1) a defendant affirmatively assisted, helped conceal, or failed to act when required to do so which enabled the fraud to proceed and (2) the actions of the defendant proximately caused the harm on which the primary liability is predicated. *McDaniel,* 196 F. Supp. 2d at 352. "A plaintiff's case against an aider, abetter, or conspirator may not rest on a bare inference that the defendant 'must have had' knowledge of the facts. The plaintiff must support the inference with some reason to conclude that the defendant has thrown in his lot with the primary violators." *Barker v. Henderson, Franklin, Starns & Holt*, 797 F.2d 490, 497 (7th Cir. 1986).

**D.   Analysis of the Claims in the Complaint**

*1.    The Complaint Does Not Plead Fraud with Particularity*

The Lozanos fail to plead fraud with sufficient particularity because the pleadings do not identify specific actions or misrepresentations by Napalitano, Padilla-Barham, or Fremont that would be fraudulent. Rather, the Lozanos merely assert that, "on information and belief," these defendants participated in transactions they "knew or should have known" were fraudulent because of their relationships with Bowie and Hayward or because of their presence at the closings. Complaint ¶¶ 16, 30, 56, 57, 66. This is plainly insufficiently specific to support a claim for fraud. *See Grumman Olson Indus.*, 329 B.R. at 429.

*2.    The Complaint Sufficiently Alleges Fraud Against Bowie for Which Fremont May Be Liable as Principal*

With respect to Fremont, while the complaint does not plead with sufficient particularity that Fremont directly defrauded the Lozanos, the complaint does adequately plead that (i) Bowie defrauded the Lozanos and (ii) Bowie was acting as Fremont's agent

9

within the scope of his employment. It is unclear whether Plaintiffs will be able to prove that Bowie's fraud should be imputed to Fremont. But the complaint's allegation that Bowie was Fremont's agent, that Fremont paid Bowie a fee for arranging the mortgage, and that Fremont did not file the mortgage in good faith at least adequately pleads that Bowie was either acting within the scope of his agency with Fremont or that Fremont ratified Bowie's conduct and retained the benefit of the fraudulent transactions. Complaint ¶¶ 20, 48, 57, 58, 68. Assuming the facts as alleged are true, the Lozanos have adequately pled a claim for fraud against Fremont based on Bowie's conduct. As a result, with respect to the fraud claim against Fremont based on Bowie's conduct, the motion to dismiss is denied.[8]

### 3. *The Lozanos Have Not Pled an Aiding and Abetting Fraud Claim*

Accepting the facts alleged in the pleadings as true, the Lozanos fail to show that the elements for an aiding and abetting fraud claim are met as to any defendant. While the pleadings assert fraudulent conduct by Bowie and Hayward, they merely assert that the other defendants "knew or should have known" of the fraud. Complaint ¶¶ 16, 30, 56, 57, 66, 67. Inference of the defendants' knowledge of the facts alone is insufficient to support a claim for aiding and abetting fraud. *See Barker*, 797 F.2d at 497. In one other instance, the Lozanos merely assert on information and belief that Napalitano misappropriated the proceeds of the 17 Liberty Street loan. Complaint ¶ 60. But, as discussed above, "information and belief" pleading is insufficient to support a fraud

---

[8] Fremont's motion to dismiss asserts, without supporting evidence, that Bowie was not Fremont's agent. For purposes of the motion to dismiss, the Court accepts the well-pleaded allegations in the complaint as true. Fremont may be able to support a motion for summary judgment on the agency issue, but it will need to await discovery before the Court will entertain such a motion.

10

claim. *See Grumman Olson Indus.*, 329 B.R. at 429. The aiding and abetting claims are therefore dismissed with leave to amend the complaint.

## CONCLUSION

The motions to dismiss the fraud and aiding and abetting claims filed by defendants Napalitano and Padilla-Barham are granted with leave to amend. The motion to dismiss the fraud claim filed by Fremont is denied. The motion to dismiss the aiding and abetting claim filed by Fremont is granted with leave to amend. Any amended complaint shall be filed within ten (10) days from the date of this Order. Fremont shall file its answer to the complaint within ten (10) days of the date of this Order.

**IT IS SO ORDERED.**

Dated:    November 25, 2008
          New York, New York


                                        **/s/Martin Glenn**
                                        MARTIN GLENN
                                        United States Bankruptcy Judge